IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Maurice O. Wilson | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 50247 |
| | ) | |
| vs. | ) | |
| | ) | |
| Peterson Cleaning Inc., | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons stated below, defendant's motion [53] for summary judgment is granted. Judgment is entered in favor of defendant and against plaintiff on all of plaintiff's claims. The status hearing set for Judge Johnston on 8/18/2017 is stricken. This case is terminated.

## STATEMENT-OPINION

Plaintiff, Maurice O. Wilson, Sr., brings this action against defendant, Peterson Cleaning, Inc., his former employer. Plaintiff alleges he was discriminated against because of his race and retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., resulting in his constructive discharge. Defendant moves [53] for summary judgment.

LR56.1 sets out the procedures governing motions for summary judgment in this court. LR56.1 requires a party moving for summary judgment to provide a statement of material facts, set forth in short numbered paragraphs, with citations to the record (affidavits, depositions, etc.) relied upon to support the facts set forth in the paragraph. LR56.1(a)(3). The party opposing summary judgment is then required to file a concise response to each numbered paragraph of the moving party's statement including, in the case of any disagreement, specific references to the record (affidavits, depositions, etc.) supporting the disagreement. LR56.1(b)(3)(B). The party opposing summary judgment is also to file a statement of additional facts which require denial of summary judgment, in the same format, with the same type of supporting references to the record as required of the moving party, LR56.1(b)(3)(C), and the moving party likewise must respond to this additional statement of facts. LR56.1(a). Any properly supported facts presented in either the moving party's statement of facts or the opposing party's statement of additional facts, that is not controverted by a properly supported response (as just described) will be deemed admitted. LR56.1(a); LR56.1(b)(3)(C).

Defendant did not file a response to plaintiff's statement of additional facts, so the properly supported facts set forth in plaintiff's statement of additional facts are deemed admitted

for purposes of summary judgment. LR56.1(a). Of course, even in a case where facts are disputed, the properly supported facts are always taken most favorably to the nonmoving party (in this case the plaintiff) on summary judgment. Accordingly, the facts are taken primarily from plaintiff's statement of additional facts, or his supporting evidence where it varies from the statement of additional facts.[1]

Plaintiff is an African-American man. He was employed by defendant from 2005 to 2014. Plaintiff primarily worked on the floor crew (cleaning floors) but often covered for employees on cleaning crews (which did general cleaning) when a cleaning crew member could not make it to work. Plaintiff was the only African-American man employed by defendant to work on the floor crew. In his affidavit, he states he was subjected to racial harassment and complained internally through written and verbal communication with defendant from 2006 until 2014.

In November 2012, plaintiff spoke with Mark Wild, defendant's president, about obtaining the lead supervisor position. Mark Wild told plaintiff he would like to see plaintiff's performance before giving him the lead supervisor position. In his affidavit, though not in his statement of additional facts, he states he was told by Steve Moriarity ("Steve"), that Brandon Moriarity was "promoted to a supervisor." In January 2014, plaintiff again inquired into the position but plaintiff was denied it. In his affidavit, plaintiff states he spoke with Mark Wild about the promotion in January 2014, but Wild never got back to him about it.

On April 14, 2014, plaintiff filed an EEOC charge. The charge alleged "[d]uring my employment I have been subjected to harassment. I have complained internally to no avail." On April 14, 2014, plaintiff told Steve, who is defendant's operations manager, that he had filed the EEOC charge. On April 17, 2014, plaintiff spoke with Steve about a past complaint plaintiff had and Steve told him he had spoken with defendant's HR manager Tracey Frasier about racial slurs plaintiff had complained about. According to plaintiff's affidavit, on April 21, 2014, Steve spoke on the phone with plaintiff's wife and referred to plaintiff by using a racial slur. In a meeting on April 29, 2014, plaintiff discussed with defendant plaintiff's treatment on the floor crew, his treatment by Nancy Shaffner and the racial slur used by Sheryl Parker[2]. In his affidavit, but not in his statement of additional facts, plaintiff says he "also complained to them about the treatment I received from Steve." At this meeting defendant gave plaintiff the option

---

[1] Plaintiff states in his brief that various affidavits submitted by defendant "should be stricken for perjury, lack of personal knowledge, bad faith, manipulation of Exhibits, and inadmissible evidence." The court did not consider these affidavits in deciding this case. The court only considered evidence supplied by plaintiff and facts presented by defendant that plaintiff stated were "undisputed" in his response to defendant's statement of facts.

[2] Neither plaintiff's statement of additional facts nor affidavit identifies this incident but it appears from defendant's submissions that plaintiff claims he overheard Parker refer to him by a racial slur. Also, plaintiff attaches a transcript of a phone conversation (which plaintiff had recorded) that he had with Steve on April 17, 2014 (identified as Ex. 17) to his brief. This transcript indicates Steve was aware of Parker's racial slur and that Steve had himself heard Parker use this slur in reference to plaintiff.

2

to remain on the floor crew, take a few cleaning accounts, or quit. After this meeting plaintiff was removed from the floor crew. In his statement of facts, he does not say whether he chose to take the cleaning accounts but in his affidavit he says he took the cleaning accounts "to avoid the continuing treatment by Steve and the floor crew members and to avoid loss in income." He was placed on paid leave until May 5, 2014.

On May 5, 2014, Mark Wild notified plaintiff that he had received plaintiff's formal complaint with the EEOC and asked plaintiff what he had said to the EEOC. On May 5, 2014 plaintiff began working on accounts defendant assigned him. Sometime in early May, Sonia Delgado called plaintiff and told him to return his company issued cell phone. Plaintiff advised her that plaintiff was paying defendant in installments for that phone. Delgado advised plaintiff that defendant would no longer be paying for the line and plaintiff would have to obtain his own phone service.

On May 12, 2014, plaintiff received a text from Nancy Shaffner, advising him there were complaints about the cleaning on the Chick-Fil-A account. In his response to defendant's statement of facts, plaintiff states he received a verbal warning May 12, 2014 regarding his cleaning. Plaintiff requested help on this account and offered to give up some of his hours. Mark Wild said "no" to this request of plaintiff's. On May 14, 2014, plaintiff learned a close family friend had died. Plaintiff called Nancy Shaffner and asked for the night off. She said she would have to get it approved by Mark Wild. Mark Wild called plaintiff and gave him the night off. According to plaintiff's affidavit, on May 15, 2014, plaintiff was called to the office and asked to sign a write-up dated May 12, 2014. When he asked what the write up was for he was told it was for violating a company policy. According to his affidavit, he had been cleaning Chick-Fil-A for one week. This was his first write-up in seven years. When he asked for a copy he was told he had to wait until Shaffner signed it and he would be given one later.[3] On May 27, 2014, plaintiff left defendant's employ. In his response to defendant's statement of facts, plaintiff does not dispute that he tendered his resignation and terminated his employment on that date. On August 28, 2014, plaintiff filed an amended charge of discrimination with the EEOC.

Looking first to the discrimination claim, in a discrimination case, on summary judgment, "the proper question to ask is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused plaintiff's discharge or other adverse employment action." Ferrill v. Oak Creek-Franklin Joint School Dist., No. 15-3805, 2017 WL 2627820, * 4 (7th Cir. June 19, 2017) (internal quotation marks and citations omitted). "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit." Citizens for Appropriate Roads v. Foxx, 815 F.3d 1068, 1077 (7th Cir. 2016). Plaintiff, therefore, must provide sufficient evidence to back up his claims. Id. Defendant argues it is entitled to summary judgment on the discrimination and retaliation claims because plaintiff has

---

[3] In his statement of additional facts, plaintiff says he was told on May 15, 2014, that he received a write-up for not calling in soon enough for defendant to find a replacement for him per defendant's call off policy. However, this portion of plaintiff's statement of additional facts has no citations to the record to support it so it will be disregarded.

3

not presented any evidence that plaintiff suffered any adverse employment action or that any similarly situated employee was treated more favorably.

"A cognizable adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Chaudhry v. Nucor Steel-Indiana, 546 F.3d 832, 838 (7th Cir. 2008) (internal quotation marks and citation omitted). Plaintiff's evidence that he suffered an adverse employment action prior to his filing of the first EEOC charge is 1) his statement that he spoke with Mark Wild in November 2012 about becoming the lead supervisor and that Wild said he would like to see plaintiff's performance before giving him the position and 2) that he talked to Wild in January 2014 about a lead supervisor position and that Wild did not give him a response.

Generally, to establish a claim for failure to promote, plaintiff needs to show that he applied for and was qualified for a position, that he was rejected for the position, and someone outside plaintiff's protected class who was not better qualified obtained the position. Riley v. Elkhart Community Schools, 829 F.3d 886, 892 (7th Cir. 2016). Assuming, without deciding, that plaintiff's conversation with Mark Wild in November 2012 was an application for the job, plaintiff presents no evidence that someone who was not better qualified obtained the position. Plaintiff's evidence on this point consists of him saying Steve told him Brandon Moriarity ("Brandon") obtained the position. Plaintiff presents no evidence concerning Brandon's qualifications for the job. He provides no basis for a factfinder to conclude Brandon was no better qualified than plaintiff. As to plaintiff talking to Mark Wild about a lead supervisor position in January 2014, plaintiff presents no evidence that the position was filled by anyone much less someone not better qualified than plaintiff. Plaintiff has failed to present evidence he suffered an adverse employment action due to race discrimination.

Turning to the retaliation claim, to survive summary judgment on a retaliation claim, a plaintiff "must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the defendants took a materially adverse action against her; and (3) there existed a but-for-causal connection between the two." Nicholson v. City of Peoria, No. 16-4162, 2017 WL 2636543, * 2 (7th Cir. June 20, 2017) (internal quotation marks and citations omitted). Plaintiff contends he suffered adverse employment actions after filing an EEOC charge of discrimination.

Plaintiff argues that after defendant learned of the charge, he was called into a meeting to discuss the charge and then given the option to remain on the floor crew, take a few cleaning accounts, or quit. In his affidavit, he says he chose the cleaning accounts. He was placed on paid leave for a week and then began work cleaning at Chick-Fil-A. Defendant received a customer complaint about plaintiff's cleaning. Plaintiff requested help on this account but defendant declined to give him any. Defendant took away the cell phone he had been paying defendant in installments for and told him he needed to get his own phone line because defendant would no longer be paying for this line. He was given a write-up dated May 12, 2014,

which he was told was for violating a company policy. It was his first write-up in seven years. Plaintiff resigned on May 27, 2014, and contends this was a constructive discharge.

"[T]o establish constructive discharge, a plaintiff must show that her working conditions, from an objective standpoint, became so intolerable that her resignation qualified as a fitting response. We have found constructive discharge where an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns. But we have subsequently clarified that the prospect of being fired at the conclusion of an extended process, without more, does not meet this standard." Swearnigen-El v. Cook County Sheriff's Dept., 602 F.3d 852, 859 (7th Cir. 2010) (internal quotation marks and citations omitted). Here there is no evidence to support a claimed constructive discharge. Plaintiff faced no threat of discharge. He received one write-up and it was his first in seven years. He presents no evidence defendant ever even hinted at firing him. Failing to give him help on the account and requiring him to obtain his own cell phone service is not enough to make his working conditions intolerable from an objective standpoint. Id. Plaintiff's resignation was not a constructive discharge.

As to the write-up itself, "[u]nfair reprimands or negative performance reviews, unaccompanied by tangible job consequences" are not actionable adverse actions in establishing a retaliation claim. Boss v. Castro, 816 F.3d 910, 919 (7th Cir. 2016). Plaintiff presented no evidence the write-up was accompanied by any tangible job consequence like loss of pay. Likewise, the change related to his cell phone was not an adverse action. The facts submitted by plaintiff show that he was paying for a phone/phone service by paying defendant installments on a phone provided by defendant. Defendant changed this arrangement by putting plaintiff in the position where he would have to obtain and pay for this phone/phone service directly rather than through defendant. This may have inconvenienced plaintiff but it simply changed who plaintiff was going to have to pay to maintain cell phone service. Plaintiff's retaliation claim fails for lack of evidence defendant took an adverse action against him in retaliation for his EEOC charge.

While it is not clear whether plaintiff is making a hostile work environment claim, plaintiff's original EEOC charge makes no reference to a failure to promote or any other adverse employment action. It simply charges that plaintiff was subject to harassment during his employment and that he had complained internally to no avail. Taking a broad view of what plaintiff may be claiming, the court will analyze the facts in light of a hostile work environment claim.

"To prove a claim for hostile work environment based on race, an employee must show that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was so severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." Cole v. Bd. of Trustees of Northern Illinois University, 838 F.3d 888, 895-96 (7th Cir. 2016). To determine whether conduct meets the third element, a court must look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Alexander v. Casino Queen, Inc., 739 F.3d 972, 982 (7th Cir. 2014) (internal quotation marks and citation omitted.)

Plaintiff presents no evidence of his racial harassment by his co-workers on the floor crew. His statement of additional facts states simply that he worked primarily as a member of the floor crew from January 2006 to May 2014 and that the racial harassment commenced in 2006 and lasted throughout his employment with defendant. His affidavit says only that he "was subjected to racial harassment and complained internally through written and verbal communication" with defendant. However, he does not supply any specific evidence of the conduct he claims constituted racial harassment. Without evidence of the conduct, plaintiff has failed to meet his burden of showing severe or pervasive harassment.

This leaves the two instances of plaintiff being referred to by a racial slur. One of these was in Steve's phone call to plaintiff's wife on April 21, 2014. The other was plaintiff overhearing Parker use the slur in reference to him. The record (plaintiff's statement of additional facts and affidavit) shows these instances were first brought to defendant's attention at an April 29, 2014 meeting attended by plaintiff, Mark Wild, Sue Wild, Tracey Frasier, and Steve. On May 1, Mark Wild spoke with plaintiff on the phone telling him he would like to have another meeting to obtain specifics based on what plaintiff "had to say the other day." A follow-up meeting was held on May 5, 2014. Plaintiff quit on May 27, 2014. There is no evidence presented by plaintiff suggesting defendant failed to investigate these incidents prior to plaintiff's resignation. There is no evidence any racial slurs were used by anyone after the April 29, 2014 meeting where plaintiff told Mark Wild about the two incidents.

Whether an employer is liable for harassment may depend on the status of the harasser. Vance v. Ball State Univ., __ U.S. __, 133 S.Ct. 2434, 2439 (2013). When the harasser is a coworker, the employer is liable "if the employer was negligent with respect to the offensive behavior." Id., at 2441. However, if the harassing employee is the plaintiff's supervisor, "an employer may be vicariously liable for its employees' creation of a hostile work environment." Id. (emphasis in original). "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." Id., at 2454. A tangible employment action is one that can effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id., at 2443 (internal quotation marks and citation omitted).

There is no evidence that either Parker or Steve was plaintiff's supervisor under this definition. Plaintiff presents no evidence either of them had any authority over plaintiff to hire, fire, promote, or reassign his responsibilities. It's clear from plaintiff's evidence that only Mark Wild had the authority to promote plaintiff. It was Mark Wild plaintiff asked to make him the lead supervisor and Mark Wild who did not do so. From plaintiff's evidence it also appears only Mark Wild had the authority to reassign plaintiff as it was Wild who offered plaintiff the option

to move from the floor crew to a cleaning crew. There is no evidence either Parker or Steve had the authority to hire anyone or that either of them had the authority to fire plaintiff.

Because neither Parker or Steve was plaintiff's supervisor, defendant can only be liable if defendant was negligent with respect to the offensive behavior. Id., at 2441. Defendant must have been "negligent either in discovering or remedying the harassment." Vance v. Ball State Univ., 646 F.3d 461, 470 (7th Cir, 2011). Plaintiff has not shown defendant was negligent in discovering or remedying the harassment. The only evidence shows defendant first learned of the slurs by Steve and Parker on April 29, 2014 and there is no evidence of any further use of racial slurs during the rest of plaintiff's employment. From the evidence, it cannot be concluded that defendant was negligent in discovering or remedying the offensive behavior.

For the foregoing reasons, defendant's motion [53] for summary judgment is granted. Judgment is entered in favor of defendant and against plaintiff on all of plaintiff's claims. This case is terminated.

Date: 7/17/2017                    ENTER:


                                   _____
                                   United States District Court Judge


                                   Electronic Notices. (LC)

7